NOT FOR PUBLICATION                                [Docket Nos. 18 & 20]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| STEPHEN GILBERT, et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>CAMDEN CITY, et al.<br><br>            Defendants. | Civil No. 04-3268 (RMB)<br><br>**OPINION** |

Appearances:

    Michael William Kahn
    Law Offices of Michael W. Kahn
    1702 Haddonfield Berlin Road
    Chery Hill N.J. 08003
        Attorney for Plaintiffs,

    Frank A. Salvati
    Office of City Attorney
    4th Floor - City Hall
    Camden, NJ 08101
        Attorney for Defendant, Camden City

    Emmett E. Primas, Jr.
    The Heard Building
    20 East Centre St.
    Woodbury, NJ 08096
        Attorney for Defendant, Christopher Frucci

**BUMB**, United States District Judge:

    This matter comes before the Court upon motions by Defendant Camden City, and Defendant Christopher Frucci, for summary judgment on Plaintiffs' claims.  For the reasons discussed below,

Defendants' motions will be granted in part and denied in part.

I.   Statement of Facts:

The following facts are found in Plaintiffs' Statement of Facts and the depositions attached thereto.

Plaintiffs, Stephen Gilbert, Michael Gilbert, Joshua Settle, James Harrison, and Paul Zito are residents of Pennsylvania who, on July 12, 2002, attended a concert at the Tweeter Center in Camden, New Jersey.  When they left the concert they discovered that one of their party, Joshua Settle, had misplaced the keys to his car.  As the party discussed the situation tensions rose. Stephen Gilbert ("Gilbert") and James Harrison ("Harrison") stepped away from the group to ease the tension and further discuss the missing keys.

Camden City Police Officers Christopher Frucci ("Frucci"), and Bernard Wilson ("Wilson"), were patrolling the Tweeter Center's parking lots in an unmarked white jeep.  Frucci and Wilson came across Gilbert and Harrison and believed the two were involved in an argument.  Gilbert and Harrison do not dispute that their posture toward each other may have been antagonistic. Frucci and Wilson, stopped their jeep and called out to Gilbert and Harrison.  Gilbert, unaware that Frucci and Wilson were police officers, told them, "[n]othing to see here. Move along." Frucci responded with some obscenities and both he and Wilson

exited the jeep.

Frucci and Wilson identified themselves as police officers and approached the two men. Gilbert testified that Frucci came up to him and pushed him, prompting Gilbert to identify himself as a military police officer and tell Frucci that he was using excessive force. Gilbert turned away from Frucci and was struck in the back of the head, knocking him to the ground. Frucci then repeatedly stuck Gilbert in the back of the head before placing him in handcuffs. While this took place, Wilson began pushing Harrison. Wilson pushed Harrison down to the ground and proceeded to kick and stike him before putting him in handcuffs.

Michael Gilbert ("Michael"), who had remained with the rest of the party, became aware that Gilbert and Harrison were being arrested and ran up to the scene. Michael claims he placed his hands up and told the officer that he did not want any trouble; he just wanted to bring his friends home. He testified that Frucci then threw him to the ground, placed his knee on Michael's back and began stiking him in the back of the head. Frucci then stepped on his head and left his foot pressed against his neck for a couple minutes. Michael was also handcuffed. Police officers, although not necessarily Frucci and Wilson, then placed both Gilberts and Harrison in the back of a police van.

Paul Zito also became aware of the melee and ran up to the scene. An unknown officer struck Zito and threw him to the

ground where he was hit in the legs with a nightstick, kicked and punched.  Zito was handcuffed and then Frucci struck him.  Frucci then brought him to the van with the Gilberts and Harrison where Frucci again assaulted him by kneeing him in the chest, knocking the wind out of him.  Josh Settle was also arrested and placed in the van with the Gilberts, Harrion, and Zito.  There is no evidence before the Court, however, on why and how Settle came to be arrested.

    The Plaintiffs were transported to the City jail and placed in a cell.  Stephen Gilbert was taken out of the cell and placed in a room where he was told to face the wall.  Someone, presumably a police officer, entered the room and began punching Gilbert in the face until he fell to the ground.  The punching continued for some time as Gilbert lay on the floor.  Because Gilbert was facing the wall he never saw who was striking him.  The individual was never identified.  After the attack, Gilbert was brought to the hospital were he received stitches to close a wound below his eye.  Michael Gilbert was also transported to the hospital where he was treated for "a lower lip laceration, face swelling, and blood in his ears."  (Pls.' Stmt. of Facts ¶ 22).

    Plaintiffs brought suit in this Court on July 9, 2004, against Camden City, the Camden City Police Department, and Officers Frucci and Wilson.  In a seven Count Complaint, Plaintiffs allege violations of unlawful seizure and excessive

force in violation of the Fourth, Fifth and Fourteenth Amendments.  (Count 1).  Plaintiffs allege violations of their corresponding state Constitutional rights.  (Count 2).  Plaintiffs allege state law claims against Wilson and Frucci for the intentional torts of assault and battery, (Count 3), false imprisonment, (Count 4), and intentional infliction of emotional distress, (Count 5).  Plaintiffs also allege that Defendant Camden City failed to train its employees in violation of the Constitution.  (Count 6).  Finally, Plaintiffs allege Camden City with negligent hiring and retention.  (Count 7).

Camden City now moves for summary judgment on multiple grounds.  The City contends that the Camden Police Department cannot be sued as an entity distinct from the City.  Further, the City contends that Plaintiffs cannot produce evidence that the City had a policy or custom of not properly training or that it was negligent in its hiring or retention.

Defendant Christopher Frucci has also moved for summary judgment.  Frucci argues that he is entitled to qualified immunity on Plaintiffs' constitutional claims.  Further, Frucci asserts a New Jersey statutory immunity on Plaintiffs' state law claims.  Finally, Frucci argues there is insufficient evidence to support a claim of excessive force.

II.  Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. <u>Pollock v. American Tel. & Tel. Long Lines</u>, 794 F.2d 860, 864 (3d Cir. 1986).  The ultimate question is "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." <u>Anderson</u>, 477 U.S. at 254.

Summary judgment against a party who bears the burden of proof at trial, as Plaintiffs do here, is proper if after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Under such circumstances, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Id. at 323 (internal quotations omitted).  Further, "the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.

III. Analysis

Before beginning analysis of the instant motion the Court must address the most recent filing of Defendant, Camden City. Defendant Camden City filed a motion for summary judgment on November 14, 2006.  [Doc. 18].  The Clerk set a return date for Defendant's motion of December 15, 2006.  Under Local Civil Rule 7.1(d)(2) opposition to Defendant's motion was due 14 days prior to the return date and, under Local Civil Rule 7.1(d)(3), any response by Defendant was due "seven days after service of the opposition papers."  On December 6, 2006, the Court granted Plaintiffs' request for an extension of time to oppose Defendant's motion, and ordered that Plaintiffs' opposition be submitted by January 19, 2007, [Doc. 21]; Plaintiffs filed their opposition on that date, [Doc. 22].  Accordingly, Defendant's response was due on or before January 26, 2007.

On March 12, 2007, forty-five days after the date when Defendant's response would have been due under Local Civil Rule 7.1(d)(3), Defendant submitted a response with neither acknowledgment of nor explanation for the extreme lateness of its

7

submission. [Doc. Nos. 24, 25]. Under Federal Rule of Civil Procedure 12(f) and this Court's inherent power to enforce the Local Civil Rules the Court may strike a submission that fails to comply with the clear and unambiguous language of the Local Civil Rules. Therefore, the Court will strike Defendant's untimely response; it will not considered by the Court.

    A.    The City's Motion for Summary Judgment

        1.    Constitutional Claims

Camden City (the "City") contends that the Camden Police Department cannot be sued as an entity distinct from the City. Further, the City contends that Plaintiffs cannot produce evidence that the City had a policy or custom of not properly training or that it was negligent in its hiring or retention. Plaintiffs counter that a single and especially egregious act can give rise to an inference of a policy or custom, and that the underlying claims are sufficiently egregious to permit such an inference.

Plaintiffs do not contest the City's assertion that the Camden Police Department cannot be sued as an entity separate from the City. In New Jersey a municipal police department is not a distinct judicial entity separate from the municipality. See, N.J. Stat. Ann. § 40A:14-118; see also, Padilla v. Twp. of Cherry Hill, 110 Fed. Appx. 272, 278 (3d Cir. 2004) (police departments cannot be sued in conjunction with municipalities

because police departments are administrative arms of local municipalities, not separate entities). Accordingly, the Camden Police Department is not a proper defendant in this action and will be granted summary judgment on all claims.

As to the claims against Camden City, Plaintiffs must show that a municipality's "failure to train its police officers . . . reflects a deliberate or conscious choice by policymaking officials . . . ." Grazier v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003). Further, the choice must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." Canton v. Harris, 489 U.S. 378, 388 (1989). Essentially, the policy or custom must be a "moving force" behind the constitutional injury. Grazier, 328 F.3d at 125. The City contends that Plaintiffs can offer no evidence of a policy or custom of failing to train its police officers.

Plaintiffs do not dispute that they have no direct evidence of a policy or custom. Rather, Plaintiffs offer the egregious nature of Frucci and Wilson's conduct as circumstantial evidence of lack of training. Plaintiffs' support is drawn from cases, neither from this circuit nor its member courts, that are themselves applications of the Supreme Court's decision in City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985) (plurality opinion). Unfortunately, Tuttle stands for a proposition contrary to Plaintiffs' position.

9

There, a four member plurality of the Court stated that a single act of an individual police officer, even if outrageous, is insufficient on its own to permit an inference of a municipal policy or custom of failing to train. Id. at 821. A three member concurrence agreed:

> [t]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in Monell [v. New York City Dept. of Social Services, 436 U.S. 658 (1978)].

Id. at 831 (Brennan, J., concurring). Both the plurality and concurrence recognized that an affirmative act, whether inadequate training or no training, is necessary to be able to infer that the egregious act was in fact the consequence of the municipality's policy or custom. Id. at 803-04; id. at 832-33 (Brennan, J., concurring). In other words, and consistent with current law in the Third Circuit, a plaintiff must show the policy or custom is a "moving force" behind the constitutional injury regardless of the number of acts, egregious or otherwise. Grazier, 328 F.3d at 125.

Plaintiffs assert that Camden City requires the Tweeter Center to employ Camden City Police Officers as security for events. Plaintiffs also claim that the officers so employed receive no "specialized training particular to that function . . . ." (Pls.' Opp. at 14). Thus, Plaintiffs offer, the lack of

10

training in crowd control demonstrates the City's deliberate indifference to the rights of the Tweeter Center's patrons.

Plaintiffs' argument lacks evidentiary support. Nowhere in Plaintiffs' brief or Counter-Statement of Facts is the Court directed to testimony or evidence to support the contention that the individual Defendants were not trained in crowd control. In fact, page fifteen of Plaintiffs' opposition brief is almost entirely factual statements without any evidentiary support in the record before the Court. Plaintiffs' counsel has, however, attached wholesale depositions to its opposition. This is a practice which should not be repeated; counsel should include only those excerpts needed to support the facts in a Rule 56.1 Statement. See Cataldo v. Moses, 361 F. Supp. 2d 420, 426 (D.N.J. 2004). Further, any evidence not supported with citation to the record and overlooked by the Court will not be grounds for a motion for reconsideration. Cf. Clawans v. United States, 2000 U.S. Dist. LEXIS 18808, *39 (D.N.J. Dec. 26, 2000) ("To the extent that the lack of a Statement of Undisputed Facts has hampered this process [of reviewing the record and materials submitted], any complaint that some piece of evidence was overlooked, for example in a motion for reconsideration, is correspondingly attenuated.").

Plaintiffs' argument fails notwithstanding the paucity of evidence. Plaintiffs states that the individual Defendants were

11

not trained in crowd control.  Plaintiffs then offer that this lack of training demonstrates a deliberate indifference to the rights of the Tweeter Center's patrons.  Granting, for the sake of argument, these contentions, Plaintiffs still must demonstrate that a jury could conclude that the lack of training and the deliberate indifference were a "moving force" behind the constitutional injuries.  <u>Grazier</u>, 328 F.3d at 125.  However, Plaintiffs provide neither evidence nor argument on how the lack of training in crowd control led to the confrontation and melee between the Defendants and Plaintiffs.

Accordingly, because Plaintiffs offer no evidence to support a finding that the City of Camden failed to train its police officers; and that even with such evidence there is no evidence that the lack of training contributed to Plaintiffs' constitutional injuries, Camden City will be granted summary judgment on Plaintiffs' claims in Count 6.

### 2. Negligent Hiring and Retention

The City also argues that Plaintiffs have no evidence to support their claim of negligent hiring and retention.  A claim for negligent hiring or retention requires evidence of the employer's knowledge of the foreseeability of harm to third persons, and a showing that the employer's negligence in the face of such knowledge proximately caused the complained of harm.  <u>Di Cosala v. Kay</u>, 91 N.J. 159, 173-73 (1982).  The City will only be

12

liable for the torts of its employees where it knew or should have known they were unfit or otherwise dangerous, could have foreseen the employees' causing harm to Plaintiffs, and the employees' dangerousness is the proximate cause of Plaintiffs' injuries. Id.

In support of their claim, Plaintiffs point to the individual Defendants' testimony that any police officer could work an event at the Tweeter Center. (Pl.'s Opp. at 15). The City, the testimony indicated, would permit officers to work at the Tweeter Center even if they were not assigned to work that involved interaction with the public.[1] This included officers that had excessive force claims against them, or were on desk duty because of the use of deadly force. Assuming these facts are true, there is no evidence to indicate that the individual Defendants were unfit or otherwise dangerous. There is no evidence that the City should have foreseen the individual Defendants harming Plaintiffs. Further, there is no evidence that any act or failure to act proximately caused the injuries of which Plaintiffs complain. Simply put, Plaintiffs have not produced evidence to support a single element of negligent hiring or retention.

---

[1] Note, this evidence does not indicate these officers were not trained to engage the public at large, or that the individual Defendants here were assigned to administrative or other non-public duties.

Accordingly, because Plaintiffs offer no evidence to support a finding that the City of Camden was negligent in its hiring and retention of the individual Defendants, the City of Camden will be granted summary judgment on Plaintiffs' negligent hiring and retention claim, Count 7.

       3.   Remaining Common Law Claims

The City does not address, and this Court will not reach, the remaining claims against the city. They are, Count 2, the state constitutional claims; and Counts 3, 4 and 5, potential respondeat superior liability for the intentional torts of assault and battery, false imprisonment, and intentional infliction of emotional distress.

      B.   Officer Frucci's Motion for Summary Judgment

Defendant, Officer Christopher Frucci, moves for summary judgment on all claims. Frucci asserts qualified immunity on Plaintiffs' constitutional claim, and statutory good faith immunity on Plaintiffs' state law claims. Frucci also argues that Plaintiffs' have insufficient evidence to support their claim of excessive force.

       1.   Qualified Immunity

It is important to resolve qualified immunity issues early on in a case. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). It calls for a multi-step

14

analysis, considered in proper sequence. <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001). The Court must first determine if the facts alleged, taken in the light most favorable to the injured party, show a constitutional violation. <u>Id.</u> at 201. The second inquiry concerns whether there was a reasonable mistake of fact or law. <u>Butz v. Economou</u>, 438 U.S. 478, 507 (1978). The latter concerns whether the right was clearly established such that an objectively reasonable officer could not be mistaken that his conduct violated that right. <u>Saucier</u>, 533 U.S. at 205-06. The former concerns whether an officer made a reasonable mistake of fact. <u>Butz</u>, 438 U.S. at 507; <u>see also</u>, <u>Couden v. Duffy</u>, 446 F.3d 483, 502 (3d Cir. 2006) (Weiss, J., dissenting).

Stephen Gilbert and James Harrison claim that Frucci, accompanied by Officer Wilson, first approached them by driving up in a white unmarked jeep while they were talking in the parking lot. (Harrison Dep. at 29-30). Defendants testified that they saw Gilbert and Harrison standing in an aggressive posture that might have been a prelude to an altercation and decided to stop. (Wilson Dep. at 20:21 - 21:22). Gilbert and Harrison also testified that there was tension between members of their group over the missing keys. (Settle Dep. at 17:25 - 18:6; S. Gilbert Dep. at 19:24 - 20:9). Unaware that Frucci and Wilson were police officers, Stephen told Frucci and Wilson "mind your business or move along . . . ." (S. Gilbert Dep. at 21:21-22).

15

Defendants got out of the jeep, identified themselves, and approached Gilbert and Harrison. (Harrison Dep. at 30).

Plaintiffs allege that Defendant then began pushing Gilbert and Harrison without provocation. (Harrison Dep. at 30). Frucci pushed Gilbert while Wilson confronted Harrison. (S. Gilbert Dep. at 30:19-25). Harrison is "handcuffed and thrown to the ground, kicked, punched, [and] dragged." (Harrison Dep. at 30:24-25). A black female officer then held a pistol to his head. (Harrison Dep. at 31:3-4). He witnessed Frucci "punching my friend Michael Gilbert while he lay on his stomach, punching him in the head repeatedly." (Harrison Dep. at 31:12-14).

This took place while Frucci was pushing Stephen Gilbert, who witnessed Wilson punch, cuff, and drag Harrison away. (S. Gilbert Dep. at 23:19 - 25:17). At this point, Gilbert turned away and was punched in the back of the head. (S. Gilbert Dep. at 26:9-12). He fell to the ground, was pinned down physically, and punched in the back of the head while being told to place his hands behind his head. (S. Gilbert Dep. at 26). Although Gilbert could not identify who it was who punched him and cuffed him, (S. Gilbert Dep. at 26), Frucci testified that he fought with Gilbert and cuffed him, (Frucci Dep. at 16:5-16).

At some point Gilbert and Harrison's friends become aware that they are being arrested and approached the scene. Gilbert's brother, Michael Gilbert, testified that Wilson pushed him and

16

Frucci punched him.  (M. Gilbert Dep. at 38:12-22).  Frucci then placed his knee in Michael's back and began punching him in the back of the head.  (M. Gilbert Dep. at 40:16-19).  After punching Michael into submission, Frucci cuffed him, and stepped on his head.  (M. Gilbert Dep. at 43:2-22).  At some point backup arrived to assist Wilson and Frucci and the three men, now cuffed, were placed in a van.  (M. Gilbert Dep. at 47:11-20).

Paul Zito also became aware of the melee and ran up to the scene.  An unknown officer struck Zito and threw him to the ground where he was hit in the legs with a nightstick, kicked and punched.  (Zito Dep. at 31-33).  Zito was handcuffed and then Frucci struck him.  (Id. at 36:10-11).  Frucci then brought him to the van with the Gilberts and Harrison where Frucci again assaulted him by kneeing him in the chest, knocking the wind out of him.  (Id. at 37:9-20).  Josh Settle was also arrested and placed in the van with the Gilberts, Harrion, and Zito.  There is no evidence before the Court, however, on why and how Settle came to be arrested.

Under the facts as related by Plaintiffs, and taken in the light most favorable to them, Wilson and Frucci violated their constitutional rights.  Use of excessive force constitutes an unlawful seizure under the Fourth Amendment.  Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006).  Conduct constitutes excessive force if, given the totality of the circumstances, the force used

17

is objectively unreasonable to effect a given end such as an arrest.  Id. at 496-97.  Courts should not employ hindsight but rather appreciate the nature of police work and the need to "make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving . . . ."  Id. at 497 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).

Taking the facts in the light most favorable to Plaintiffs', it was objectively unreasonable for Wilson and Frucci to assault Stephen and Michael Gilbert and Harrison without provocation. Officers Frucci and Wilson violated the Plaintiffs' right to be free from excessive force.  The next step in the qualified immunity analysis requires an examination of whether the rights violated were clearly established, and whether a reasonable mistake of fact justified the Defendants' unlawful conduct. Here, neither is applicable.

Even when provoked, an officer can employ force only to the extent necessary to achieve his lawful objective, whether it is securing the safety of himself or others, or affecting an arrest. In re Estate of Marasco, 430 F.3d 140, 150 (3d Cir. 2005). Thus, is objectively unreasonable for a police officer to assault a citizen without provocation.  While Frucci claims they were assaulted by Plaintiffs and Plaintiffs contend the opposite, this dispute is one for the trier of fact.  The disputed facts, taken in the light most favorable to Plaintiffs, do not reveal an

objectively reasonable belief that would have justified Defendants' conduct.

Accordingly, Defendant Frucci will be denied qualified immunity on Plaintiffs' constitutional claims, Count 1.

2. Frucci's Motion for Summary Judgment on the Merits

Frucci also argues that the each Plaintiff cannot present sufficient evidence to maintain a claim for excessive force. In order to be personally liable, a defendant must have participated in a violation of one's constitutional rights, directed others to violate them, or, as a supervisor acquiesced in a subordinate's violations. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). As detailed above, Michael and Stephen Gilbert and Paul Zito can maintain a claim for excessive force against Frucci, who the evidence indicates directly assaulted them. There is no evidence before the Court, however, that the remaining Plaintiffs, Harrison and Settle, were assaulted by Frucci.

Accordingly, Frucci will be denied summary judgment on the excessive force claims brought by Stephen Gilbert, Michael Gilbert, and Paul Zito. Frucci will be granted summary judgment on the excessive force claims of Harrison and Settle.

3. State Law good faith immunity.

Frucci's final argument in favor of summary judgment is New Jersey's statutorily provided good faith immunity on state law claims. The statute, N.J. Stat. Ann. § 59:3-3, provides a good

faith immunity against state law claims for public employees. The immunity is analyzed under an identical standard as that for federal law's qualified immunity.  See, Hayes v. Mercer County, 217 N.J. Super. 614, 622 (App. Div. 1987).  Accordingly, Defendant is not entitled to good faith immunity on the state law claims for precisely the same reasons he was not entitled to qualified immunity on Plaintiffs' constitutional claims.  The evidence in Plaintiffs' favor indicates intentional torts committed by Defendant for which no good faith defense exists.

IV.  Conclusion

    For the reasons discussed above, Camden City will be granted summary judgment on all claims in Plaintiffs' Count 1, Count 6 and Count 7.  Defendant Frucci will be denied summary judgment on the claims of Count 1 as to Stephen Gilbert, Michael Gilbert, and Paul Zito.  Frucci will be granted summary judgment on the claims of Count 1 as to Harrison and Settle.

    What remains of Plaintiffs' Complaint is as follows: Count 1 remains against Wilson by all Plaintiffs, and against Frucci by both Gilberts and Zito.  Counts 2 through 5 remain against all Defendants by all Plaintiffs.  Counts 6 and 7, alleged against the City, are dismissed in their entirety.

```
                                    s/Renée Marie Bumb
Dated: April 4, 2007                RENÉE MARIE BUMB
                                    United States District Judge
```